IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

SBA NETWORK SERVICES, INC.,

       Plaintiff,                                  05cv1392

v.                                          **Electronically Filed**

TELECOM PROCUREMENT
SERVICES, INC., ET AL.,

       Defendants.

## Memorandum Opinion

This is an action for breach of contract. Plaintiff, SBA Network Services, Inc. (SBA) alleges that defendant Telecom Procurement Services, Inc. (TPS), breached a subcontract agreement when it failed to provide indemnification for a fire to a cellular telecommunication allegedly caused by the negligence of sub-subcontractors TNT Communications (TNT), Gerald Kerschner (Kershner), and Rick Rollert (Rollert). Plaintiff seeks damages for replacement of the tower in the amount of $237,369.97, plus attorney's fees and costs. Pending before this Court are the parties cross-motions for summary judgment. After careful consideration, and for the reasons that follow, this Court will grant plaintiff's motion for summary judgment (doc. no. 13) against defendant TPS as to liability, will deny plaintiff's motion for summary judgment (doc. no. 13) as to damages at this time, and will deny defendant TPS's motion for summary judgment (doc. no. 15) as to the breach of contract claim, and will grant said motion as to the negligence claims.

### I. Facts

The facts may be fairly summarized as follows:

On October 9, 2003, a fire occurred at a cellular telecommunications tower which was

owned by Sprint.  Cingular Wireless (Cingular) contracted with Bechtel Corporation (Bechtel) to add Cingular's capacity at various cellular tower sites in New York state, including the Catskill, New York site, where the subject fire occurred.  Bechtel then contracted with SBA as well as TPS for work at these sites.  TPS had submitted a bid to Bechtel for work on the cellular tower at the Catskill site, but Bechtel awarded the sub-contract to SBA.

SBA is a Florida corporation, but it does business in New York state.  TPS is a New York corporation with a principal of business in New York, and in addition TPS performs work in other states, including Pennsylvania.  Defendant TNT is a sole proprietorship with its principal place of business in Iowa, and defendants Kershner and Rollert, are residents of Iowa and are the owners of TNT.

The Catskill work required the addition of one (1) entry port into the cellular tower near its base and three (3) exit ports near the top of the tower, which TPS proposed in its "Firm Fixed Quotation" to SBA on September 29, 2003 for the sum $2,300.00.  As part of the "Firm Fixed Quotation" TPS also proposed work on another site (Saugerties, New York) for $2,000.00

On October 1, 2003, Jackie Donahue, in her capacity as a contract expeditor for SBA, sent a facsimile to TPS, entitled "Quotation Reference", which consisted of four (4) pages.  The first page was a fax cover sheet indicating the total number of pages faxed as four, and stating "Here is the signed contract.  Please accept this as your notice to proceed."  The second page was a return copy of the first page of the "Pricing Proposal" ("Firm Fixed Quotation") which had been sent by TPS to SBA on September 29, 2003 ("[TPS] is pleased to provide the following formal price proposal valid for 30 days. . . ")  The third page was the second page of the TPS Pricing Proposal, which was signed by Jackie Donahue. And, the fourth page was a return copy

of the appendix page to the TPS pricing proposal which contained a brief statement of the work to be performed by TPS.

The next day, October 2, 2003, a "Purchase Order Subcontract Agreement," was signed and dated by SBA representative Victor Lizardo, and also signed and dated by an authorized representative of TPS, Patricia Nelson, which incorporated the "Firm Fixed" pricing of the October 1, 2003 document - $4,300.00. The "Purchase Order Subcontract Agreement," further stated: "The selected following attachments are incorporated into this Subcontractor Agreement." Exhibit A - "Subcontract Agreement," Exhibit B -  "General Conditions for Construction Subcontracts," Exhibit C - "Minimum Safety Requirement For Contract Work Form 4002," and Exhibit D - "Supplement Equal Employment Opportunity Form 4079."

Notably, Section 29.0 of the "General Conditions for Construction Subcontracts" (Exhibit B), which was incorporated into the "Purchase Order Subcontract Agreement," states as follows:

> Subcontractor shall protect, hold free and harmless, defendant and indemnify Contractor and Owner (including its agents and employees) for all indemnity, penalties, costs, losses, damages, expenses, causes of action, claims or judgments (including attorneys' fees) resulting from injury or death sustained by any person (including Subcontractor's employees) or damage to property of any kind, which injury, death or damages arises out of or is in any way connected with the performance of work under this contract. Subcontractor's aforesaid indemnity and save harmless agreement shall apply to any acts or omissions, willful misconduct or negligent conduct, whether active or passive on the part of Contractor, Owner or Subcontractor or its agents, lower tier subcontractors or employees: except that said agreement shall not be applicable to injury, death or damage to property arising from the sole negligence or willful misconduct of Contractor, Owner, his agents, servants or independent contractors (other than Subcontractor) who are directly responsible to Contractor or Owner.

On October 4, 2003, subcontractor TPS contracted with sub-subcontractor TNT and entered into a Purchase Order Agreement in the amount of $3,500.00 for the work at the Catskill and Saugerties sites.

On the morning of October 9, 2003, Joseph Rains, an SBA superintendent arrived at the Catskill site and met with defendants, Kershner and Rollert, who were the employees/owners of TNT. Only Rains had access to the compound at the Catskill site and he unlocked the gate to the compound area and gave TNT access to it. The parties dispute whether Rains was the supervisor ("was in charge of") TNT employees Kershner and Rollert on the date of the fire. Doc. No. 22, at 12.

Nonetheless, at the time of the fire, the only persons who were present were TNT employees/owners Kershner and Rollert, and SBA superintendent Rains. Although section 19.0 of the "General Conditions for Construction Subcontracts" (incorporated into the "Purchase Order Subcontract Agreement") required TPS to have a supervisor on site, because Terry Pennell of TPS informed SBA that he would not be onsite, Rains decided to go to the site, and he listed himself as the supervisor of the site on the form he signed (which was required by Bechtel) on October 9, 2003. However, according to plaintiff, TPS's failure to have a supervisor on site as required by section 19.0 of the Purchase Order Subcontract Agreement between SBA and TPS required Rains to complete the paperwork required by Bechtel. Prior to the fire, Kershner and Rollert indicated to Rains that they would cut and install the entry (bottom) port on October 9, 2003, but they would finish the job by installing the three (3) exit (top) ports the next day.

At some point during Kershner's performance of work on the cellular tower, Rains left the site and took Rollert to the local hardware store to purchase grinding wheels. After escorting Kershner to the store, Rains then left the Catskill site, and when he returned later on that day, as he was driving into the area, Rains noticed smoke coming out of the tower. He tried to call Todd D'Angelo of SBA, Summer Pieczonka of Bechtel, along with 911, and he ultimately notified the

state police of the fire. Although attempts were made by TNT employees to extinguish the fire before substantial structural damage occurred, the fire caused the tower to bend and look as it if was going to fall. Because TPS supervisors were not present, Rains completed a sixty-second and sixty-minute incident report, as was required by Bechtel. Ultimately, the tower was damaged beyond repair and plaintiff was required to pay for the costs of replacement of the tower after the fire and according to plaintiff, the costs for replacement was $237,369.97.

Plaintiff filed the instant action alleging that defendant TPS breached the "Subcontract Order Purchase Agreement" when it failed to provide indemnification for the fire caused by the alleged negligence of its agents/sub-subcontractors TNT, Kershner and Rollert (Count I). Plaintiff also brought a claim for negligence (Count II) against defendant TPS, as well as negligence claims against defendant TNT, Kershner and Rollert (Counts III-V respectively).

## II.  Standard of Review

Summary judgment under Fed.R.Civ.P. 56(c) is appropriate "'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Woodside v. School Dist. of Philadelphia Bd. of Educ.*, 248 F.3d 129, 130 (3d Cir. 2001), *quoting Foehl v. United States*, 238 F.3d 474, 477 (3d Cir.2001) (citations omitted). In deciding a summary judgment motion, the court must "view the evidence ... through the prism of the substantive evidentiary burden" to determine "whether a jury could reasonably find either that the plaintiff proved his case by the quality and quantity of the evidence required by the governing law or that he did not." *Anderson v. Consolidated Rail Corp.*, 297 F.3d 242, 247 (3d Cir. 2002), *quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

254 (1986).

When the non-moving party will bear the burden of proof at trial, the moving party's burden can be "discharged by 'showing' -- that is, pointing out to the District Court -- that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party has carried this burden, the burden shifts to the non-moving party who cannot rest on the allegations of the pleadings and must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co.*, 998 F.2d 1224, 1230 (3d Cir. 1993). Thus the non-moving party cannot rest on the pleadings, but instead must go beyond the pleadings and present "specific facts showing that there is a genuine issue for trial," Fed.R.Civ.P. 56(e), and cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion. *Williams v. Borough of W. Chester*, 891 F.2d 458, 460 (3d Cir.1989) (*citing Celotex*, 477 U.S. at 325 (1986)). The non-moving party must respond "by pointing to sufficient cognizable evidence to create material issues of fact concerning every element as to which the non-moving party will bear the burden of proof at trial." *Simpson v. Kay Jewelers, Div. Of Sterling, Inc.*, 142 F. 3d 639, 643 n. 3 (3d Cir. 1998), *quoting Fuentes v. Perskie*, 32 F.3d 759, 762 n. 1 (3d Cir. 1994).

"In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.' *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)." *Marino v. Industrial Crating Co.*, 358 F.3d

241, 247 (3d Cir. 2004.)  *See also Doe v. County of Centre, PA*, 242 F.3d 437, 446 (3d Cir. 2001) (court must view facts in the light most favorable, draw all reasonable inferences, and resolve all doubts, in favor of the nonmoving party ).

### III.  Discussion

### A.  Applicable State Law

Preliminarily, this Court must determine which state law is applicable to the instant action.  Defendant alleges that the choice of law provisions contained in the "Subcontract Purchase Order Agreement," between SBA and TPS are not clear and that New York law should apply.  The one page document that addresses choice of law and which was incorporated into the "Subcontract Purchase Order Agreement," by reference, entitled "Conditions" states the following:

> This Contract shall be construed subject to the laws of the state of the purchaser (SBA) designated on this order and, where applicable, by said states and by the provisions of the uniform Commercial Code, and not the Convention for the International Sale of Goods.

It is undisputed that SBA, as the purchaser, is a Florida corporation whose principal place of business is in Florida.  SBA also has a business office in Scranton, Pennsylvania and conducts business in New York.

Under Florida law, courts are obligated to enforce choice-of-law provisions unless a showing is made that the law of the chosen forum contravenes strong public policy or that the clause is otherwise unreasonable or unjust.  *Gilman Ciocia v. Wetherald*, 885 So.2d 900, 902 (Fla. App. 4 Dist. 2004)(citations omitted).

Although TPS contends that the choice of law provision should be inapplicable, it presents no evidence to suggest that this provision is, in any way, unreasonable or that the

application of this provision would be unjust. Further, TPS does not even address whether the choice of law provision contravenes any strong public policy, and this Court finds that it does not.

However, even assuming for the sake of argument that this choice of law clause was somehow ambiguous, that TPS did not assent to this provision, and that after performing a conflict of law analysis (pursuant to Section 188 of the Second Restatement, Conflict of Laws), this Court were to determine that New York law applies, the contract is still valid and enforceable under the basic rule of contract law. Further, neither the laws of New York or Florida would preclude a finding that TPS breached the contract by declining to indemnify SBA for the expenses it incurred in rebuilding the tower.

### B. Terms of the Contract - SBA v. TPS

In their cross-motions for summary judgment, SBA and TPS move for judgment as a matter of law on SBA's claim for breach of contract. While SBA alleges that section 29.0 of the "Subcontract Purchase Order Agreement" binds TPS to indemnify SBA, defendant TPS argues that it did not assent to or receive notice of these conditions. This Court finds TPS's argument unconvincing and contrary to Contracts 101.

TPS appears to argue that the only contract is the original four (4) page "Quotation Reference" which was signed by both parties on October 1, 2003, and contained a brief statement of the work to be performed by TPS, and that the October 2, 2003 signed contract, which incorporated by reference the indemnification provisions, is somehow not part of the contractual relationship and thus unenforceable. Contrary to TPS's argument, the face of the documents establish that the parties on October 1, 2003 agreed on the "pricing" terms of their agreement,

and the other terms of their agreement are set forth in the October 2, 2003 "Purchase Order Subcontract Agreement," which was signed by both parties (Patricia Nelson, for TPS and Victor Lizardo, for SBA). The October 2, 2003 "Purchase Order Subcontract Agreement" contains an unambiguous incorporation of the indemnity language, as follows: "the following attachments are incorporated into this Subcontractor Agreement," and there were check marks next to the several exhibits, including Exhibit B which was titled "General Conditions for Construction Subcontracts."

Again, section 29.0 of the "General Conditions for Construction Subcontracts" (incorporated by reference as Exhibit B to the contract), states as follows:

> Subcontractor shall protect, hold free and harmless, defendant and indemnify Contractor and Owner (including its agents and employees) for all indemnity, penalties, costs, losses, damages, expenses, causes of action, claims or judgments (including attorneys' fees) resulting from injury or death sustained by any person (including Subcontractor's employees) or damage to property of any kind, which injury, death or damages arises out of or is in any way connected with the performance of work under this contract. Subcontractor's aforesaid indemnity and save harmless agreement shall apply to any acts or omissions, willful misconduct or negligent conduct, whether active or passive on the part of Contractor, Owner or Subcontractor or its agents, lower tier subcontractors or employees: except that said agreement shall not be applicable to injury, death or damage to property arising from the sole negligence or willful misconduct of Contractor, Owner, his agents, servants or independent contractors (other than Subcontractor) who are directly responsible to Contractor or Owner.

In addition to the indemnity provisions in section 29.0, plaintiff alleges that TPS breached the following sections of the General Conditions for Construction Subcontracts: by failing to maintain a $500,000.00 insurance policy per occurrence (section 12.0), failing to use competent agents and employees to perform the subcontracted work (section 19.0), failing to have a competent supervisor and foreman continuously on the job during work hours and readily available at all times upon call (section 19.0), failing to warrant all work to be free from defects

9

in design and workmanship and material and to be performed in a workmanlike manner (section 20.0), and in failing to repair or replace at its own expense any work or property which it damaged (section 25.0).

### C. Breach of Contract - SBA v. TPS

The elements of a breach of contract action under Florida law are (1) a valid contract, (2) a material breach, and (3) damages. *Beck v. Lazard Freres & Co., LLC,* 175 F.3d 913, 914 (11th Cir. 1999).

**(1) Valid Contract**

SBA and TPS agreed to the pricing terms of the contract in the October 1, 2003 document, and one day later, on October 2, 2003, they further agreed to and signed the "Purchase Order Subcontract Agreement," with additional conditions, <u>none of which were contrary to or inconsistent with the October 1, 2003 document</u>. Thus, both documents constitute the contractual relationship between the parties.

If the additional terms set forth in the October 2, 2003 document were not acceptable to TPS, it had the ability and right to reject those additional terms and not undertake to perform the work the following week. TPS, by signing the October 2, 2003 "Purchase Order Subcontract Agreement," expressed its assent to these additional terms.

TPS has not alleged that there was any fraud or mistake in either document, and it has presented no evidence that it did not have notice of these additional conditions. Rather, the documents themselves show that the parties first agreed to the pricing terms and one day later, they agreed to additional terms.

To be enforceable, an agreement must be sufficiently specific and reflect assent by parties

to all essential terms. *Bergman v. DeIlio,* 826 So.2d 500, 503 (Fla. App. 4 Dist. 2002). When two or more documents are executed by the same parties at or near the same time, in the course of the same transaction, and concern the same subject matter, they will be read and construed together. *Whitley v. Royal Trails Property Owners' Ass'n, Inc.*, 910 So. 2d 381, 383 (Fla. Dist. Ct. App. 5th Dist. 2005). Thus, the meaning of the documents are gathered from a general view of the whole writing, with all of its parts being compared, used, and construed, each with reference to the others. *Whitley,* 910 So. 2d at 404 (citing *Specialized Machine Transport. v. Westphal,* 872 So. 2d 424, 426 (Fla. 5th 2004))(other citations omitted). This Court finds that the two documents at issue were executed by the same parties at or near the same time (merely one day apart), in the course of the same transaction, and concern the same subject matter and therefore, they will be construed together. Further, the Court finds that the terms of the "Subcontract Purchase Order" are sufficiently specific and reflects that the parties assented to the essential terms, and that those terms are not in any way ambiguous or inconsistent with the "pricing" terms, and the parties do not argue otherwise.

      To the extent TPS alleges that the indemnity provisions are inapplicable because they were incorporated into the contract, again, it is a general rule of contract law that where a contract expressly refers to and sufficiently describes another document, it is to be interpreted as part of the contract. *OBS Company, Inc. v. Pace Construction Corporation*, 558 So.2d 404, 406 (Fla. 1990)(citations omitted). TPS's arguments to the contrary are, at best, misplaced.

      Furthermore, TPS's contention that the indemnification language is unclear is likewise unconvincing. This Court will not read ambiguities into indemnification provisions where there are none. It is correct that contracts which attempt to indemnify a party against its own wrongful

acts are viewed with disfavor in Florida and will be enforced only if they express such intent in clear, unequivocal terms. *Skidmore, Owens and Merrill v. Volpe Construction Co.,* 511 So.2d 642, 645 (Fla. App. 3 Dist. 1987). *See also, Itri Brick & Concrete Corp. v. Aetna Cas. & Sur. Co.*, 680 N.E. 2d 1200, 1204 (N.Y. 1997)(Similarly, New York law provides that indemnity provisions which hold harmless a promisee against liability for damage caused by their own negligence is void and unenforceable).  However, significantly, SBA is not seeking indemnification for its own wrongful acts in this situation.  On the contrary, SBA is seeking indemnification for damages that were caused by faulty workmanship of agents of TPS. Moreover, even if SBA was seeking indemnification for its own wrongful acts - which it is not - defendant's allegations that the indemnity language should be voided because said language impermissibly attempt to hold harmless SBA for its own negligence misses the mark.  The indemnity language here unambiguously states just the opposite - that "said agreement shall <u>not</u> be applicable to injury, death or damage to property arising from the <u>sole negligence or willful misconduct of Contractor, Owner, his agents, servants or independent contractors (other than Subcontractor) who are directly responsible to Contractor or Owner</u>."  (emphasis added).

      **(2) Material Breach**

In its briefs, TPS never addresses whether there was a material breach of the contract because it focuses on the argument that the contract was not valid or enforceable.  Because this Court has conclusively determined that the contract was clear and unambiguous and enforceable as a matter of law, the next question is whether TPS materially breached the contract.  As addressed in Section B hereinabove, the contract required TPS to maintain insurance, to adequately supervise and inspect the site, to warrant that the work be performed in a

workmanlike manner and to be free from defects in design and worksmanship, to maintain the worksite and to repair or replace work or property which it damaged, and to "protect, hold free and harmless, defend and indemnify" SBA for any damages, causes of actions, expenses, claims of judgments in any way connected to the performance of work under this contract. SBA has presented competent evidence that TPS has failed to do all of the above, and TPS has not presented any evidence to rebut that assertion. Accordingly, this Court finds that TPS materially breached the contract by failing to do all of the above, and therefore, will grant plaintiff's motion for summary judgment as to liability on the breach of contract action.

**(3) Damages and Attorney's Fees and Costs**

Because the contract requires TPS to indemnify SBA for damages to the property and TPS has unjustifiably failed to do so, the next question is what damages are appropriate. Damages for breach of contract should be measured as of the date of breach. *Grossman Holdings LTD v. Hourihan*, 414 So.2d 1037, 1040 (Fla. 1982) (other citations omitted). When TPS failed to indemnify SBA, it breached section 29.0 of the General Conditions for Subcontract Agreement, thus requiring SBA to allegedly expend $237,369.97 to replace the tower. SBA has presented evidence (documentation produced during the Fed.R.Civ.P. 26(a)(1) initial disclosure and attached to SBA's Motion for Summary Judgment as Exhibit 11) of its damages of $237,369.97 and TPS has failed to offer any evidence to rebut that evidence. However, TPS is correct that this documentation has not been properly authenticated and SBA has offered no affidavit to support the damage calculations set forth in Exhibit 11.[1]

---

[1] SBA references the deposition of Todd D'Angelo, but this Court has not found any reference to the $237,369.97 in damages in the attached deposition.

Therefore, although the Court will grant SBA's motion for summary judgment as to liability on the breach of contract action, the Court is constrained to deny SBA's motion as to damages at this time.

As for the issue of attorney's fees and costs, SBA states that it is entitled to recover "approximately 25,000" in "in additional costs and expenses, including attorney's fees," it has incurred "in the pursuit of its claim against TPS." TPS argues that the attorney's fees contemplated in the agreement for indemnity related to fees incurred by SBA in defending against claims for which it was liable. After further reviewing the contract language in section 29.0, this Court finds that the following language clearly and unambiguously permits SBA to seek attorney's fees and costs, as it states:

> Subcontractor shall protect, hold free and harmless, defendant and indemnify Contractor and Owner (including its agents and employees) for all indemnity, penalties, costs, losses, damages, expenses, causes of action, claims or judgments (including attorneys' fees) resulting from injury or death sustained by any person (including Subcontractor's employees) or damage to property of any kind, which injury, death or damages arises out of or is in any way connected with the performance of work under this contract.

(Emphasis added).

Accordingly, plaintiff shall file a renewed motion for summary judgment as to damages with properly authenticated documentation of damages, as well as its documentation supporting its request for attorney's fees, consistent with the caselaw of the United States Court of Appeals for the Third Circuit, on or before August 3, 2006, and TPS shall file its response thereto on or before August 11, 2006.

### D. Negligence - SBA v. TPS, TNT, Rollert and Kershner

In the parties cross-motions for summary judgment, only TPS moves for summary judgment as to the negligence claims. Like to the "gist of the action" doctrine which is applicable in Pennsylvania, both New York and Florida courts have a similar rule (called "the economic loss" rule) that contract principles are more appropriate than tort principles for resolving purely economic losses (without accompanying physical injury to property other than that which is the subject of the contract). *Behrman v. Allstate Life Insurance Company*, 388 F.Supp. 2d 1346, 1349 (S.D. Fla. 2005). "Where the facts surrounding a breach of contract action are indistinguishable from an alleged tort, and where the alleged tort does not cause harm distinct from that caused by the breach of contract, a plaintiff is barred from bringing a separate tort action." *Id.* at 1349 (quoting *Eye Care Int'l Inc. v. Underhill,* 92 F.Supp.2d 1310, 1315 (M.D. Fla. 2000)). *See also, New York Univ. V. Continental Ins. Co.*, 87 N.Y. 2d 308, 316 (N.Y. 1995)("where a party is merely seeking to enforce its bargain, a tort claim will not lie"). Accordingly, because here SBA's tort claims against TPS and the other defendants are based solely on damages to property which is the subject of the contract between SBA and TPS, SBA's negligence claims against TPS, TNT, Rollert and Kershner will be dismissed,[2] and TPS's motion for summary judgment as to the negligence claims will be granted.

### IV. Conclusion

For the reasons set forth hereinabove, plaintiff's motion for summary judgment (doc. no. 13) will be GRANTED as to liability on the breach of contract action, and will be DENIED as to

---

[2]Additionally, the record indicates that SBA never made service on TNT, Kershner and/or Rollert.

damages at this time (plaintiff may file a renewed motion for summary judgment on damages as well as its documentation supporting its request for attorney's fees and costs on or before August 3, 2006 and TPS may file a response thereto on or before August 11, 2006). Defendant's motion for summary judgment (doc. no. 15) will be GRANTED as to the negligence claims, and DENIED in all other respects. An appropriate order follows.

SO ORDERED this 20th day of July, 2006.

s/Arthur J. Schwab
Arthur J. Schwab
United States District Judge

cc:   All counsel of record